UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

*************************************
\*
Maria Y. Brown                  \*
                              \*
        Plaintiff               \*         COMPLAINT
                              \*         Jury Trial Requested
v.                                     \*
                              \*
Town of Seabrook, NH, Michael Rabideau, \*
William Manzi and Jason Janvrin,       \*
                              \*
        Defendants        \*
                              \*
*************************************

NOW COMES the plaintiff Maria Y. Brown, by and through her attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

**I.**      <u>**Parties**</u>

1. The plaintiff Maria Y. Brown, resides at 16 Worthley Avenue, Seabrook, NH, and is a former employee of the Town of Seabrook, New Hampshire.

2. The Town of Seabrook, NH, is a body politic organized and existing pursuant to the provisions of RSA 31:1 with a principal place of business located at 99 Lafayette Road, Seabrook, New Hampshire.

3. The defendant Michael Rabideau served as Vice Chairman of the Seabrook Planning Board, and also as Chairman of the Seabrook Planning Board, at times relevant to this action and has a business address of 99 Lafayette Road, Seabrook, New Hampshire.

4. The defendant William Manzi served as Town Manager at times relevant to this action and has a business address of 99 Lafayette Road, Seabrook, New Hampshire.

5. The defendant Jason Janvrin served as Chairman of the Planning Board, and as a Planning Board member, at times relevant to this action and has a business address of 99 Lafayette Road, Seabrook, New Hampshire.

## II. Jurisdiction and Venue

6. Jurisdiction over the plaintiff's Title VII claims is proper pursuant to 28 U.S.C. §1331. The Court may exercise pendent jurisdiction over the plaintiff's State law claims.

7. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the events and omissions giving rise to the plaintiffs' claims occurred in New Hampshire.

## III. Facts

8. Ms. Brown began employment with the defendant Town of Seabrook as its Planning Board Secretary in or around October of 2015. Ms. Brown's position required her to attend Planning Board meetings and to work in the Town offices Mondays, Tuesdays, Thursdays and Fridays. Ms. Brown had an office in the Town Hall on the first floor.

9. Ms. Brown performed her job duties well. In fact, in the 2017 Annual Report of the Town of Seabrook, published in February of 2018, Ms. Brown received the following praise: "The planning board secretary, Maria Brown, has the office running in a highly efficient manner with a very welcoming atmosphere."

10. Former Planning Board Chairman Jason Janvrin (who was Planning Board Chairman during Ms. Brown's employment until March of 2018) persistently referred to women in the plaintiff's presence using sexual epithets. He repeatedly called women cunts, sluts, bitches, whores and "cum collectors." Included among the women that he would call these sexual epithets was the plaintiff's sister, Ella Brown, who was a Town of Seabrook selectmen. Planning Board Chairman Janvrin also referred to the Chairman of the Board of Selectmen,

Theresa Kyle, Welfare Officer Bonnie Armentrout, and his ex-wife using one or more of these sexual epithets.

11. Planning Board Chairman Janvrin made these vile comments not only at Planning Board meetings but in Town offices during the plaintiff's workday. At least once or twice a week, he would be present in the Town offices during the workday.

12. Ms. Brown repeatedly asked Planning Board Chairman Janvrin to desist from using the offensive sexual epithets. She told him that the comments upset and bothered her. He would laugh in her face and continue using the hurtful words.

13. Ms. Brown complained about the sexual epithets to several Town officials, including Town Manager William Manzi, and Planning Board Vice Chairman Michael Rabideau.

14. The plaintiff made one such report to Vice Chairman Rabideau on or about July 10, 2017. Vice Chairman Rabideau acknowledged that he was fully aware of the sexual epithets being used by Planning Board Chairman Janvrin. Vice Chairman Rabideau further acknowledged that he was concerned about Planning Board Chairman Janvrin hanging out in Town offices during the workday. Mr. Rabideau also acknowledged being aware of an incident that occurred on or about May 11, 2017, in the hall of the Town offices where Ms. Brown was present, along with Vice Chairman Rabideau, Town Manager Manzi, and Board Member James Sanborn, III. On this occasion Planning Board Chairman Janvrin referred to Selectman Kyle as a "cunt" and said he would place a matter on the Planning Board agenda that "should kill the bitch Kyle." Vice Chairman Rabideau told Ms. Brown at the July 10, 2017, meeting that he had spoken with Chairman Janvrin regarding these vile comments. Vice Chairman Rabideau assured Ms. Brown that he would handle the matter.

15. In or around August or September of 2017, however, Vice Chairman Rabideau made an inappropriate request to Ms. Brown that they should go out to lunch alone. Ms. Brown pointed to the wedding ring on her finger and said to Mr. Rabideau, "31 years! My husband would kill you if he heard you saying that."

16. Ms. Brown never learned of Mr. Rabideau taking any effective corrective action with regard to Mr. Janvrin.

17. Ms. Brown also met with Town Manager Manzi and Selectman Kyle on or about July 11, 2017. At this meeting Ms. Brown complained about threatening posts that had been made regarding her on Facebook by Town employees, and she also raised the issue of the sexual epithets. Town Manager Manzi assured Ms. Brown that he would address the issue with Chairman Janvrin. Ms. Brown never learned of Town Manager Manzi taking any effective corrective action with Chairman Janvrin, however.

18. Chairman Janvrin's conduct remained vile and offensive, however. He continued to come into Town offices regularly, angry and swearing and using sexual epithets. Moreover, he started expressing hostility towards Ms. Brown and made her workplace abusive, not only through his comments but his actions. Chairman Janvrin started leaving his filthy soiled clothing in Ms. Brown's office, as well as dirty cots and a tent. As a result, Ms. Brown's office stunk of body odor, feces, and stale cigarettes.

19. Moreover, after Ms. Brown reported Mr. Janvrin for his sexually harassing conduct, she regularly found destruction when she arrived at her office in the morning. Her pictures were taken down from the walls and ripped. Clocks were ripped off the walls. Her lights were smashed. Glass was shattered. Files were scattered. Ms. Brown estimates that such destructive activity occurred in her office approximately every other week after she reported Mr.

Janvrin for sexual harassment. Vice Chairman Rabideau personally observed the destruction yet did nothing, instead choosing to make fun of the broken clock on one occasion. Upon information and belief, Town Manager Manzi was also aware of the destruction but also did nothing.

20. Furthermore, Chairman Janvrin started asking others if they would like to have Ms. Brown's position as Planning Board Secretary. One such instance occurred on or about February 20, 2018, when Mr. Janvrin asked Sewer Secretary Jamie McDonald if she would like to come to work for him as the Planning Board Secretary.

21. On or about March 2, 2018, Chairman Janvrin came into Ms. Brown's office and told her that they needed to go upstairs to the Town Manager's offices for her termination meeting. Chairman Janvrin ended up going to meet with Town Manager Manzi without Ms. Brown. Mr. Janvrin came down from Town Manager Manzi's office red-faced and angry and stormed out of the Town offices. Ms. Brown continued doing her job.

22. On or about March 8, 2018, Ms. Brown was excluded from a class on software that the Planning Board Secretary would have to learn how to use. Vice Chairman Rabideau told Ms. Brown that Chairman Janvrin had ordered that Ms. Brown not attend the training session.

23. In or around the middle of March of 2018, Mr. Janvrin came into the offices and bragged that he had been fired from Staples for making fun of a gay person. As he kept imitating the person's hand gestures and calling the person a fruitcake, Ms. Brown asked him to stop, telling him that her daughter was homosexual and that his comments were offensive. Mr. Janvrin laughed.

24. Ms. Brown's contract with the Town expired on or about March 31, 2018. In previous years the Town had met with her before her contract expired to discuss the terms of its renewal. No such meeting occurred in 2018.

25. On or about April 6, 2018, Town Manager Manzi called Ms. Brown to his office and demanded her keys to the safe and office. Ms. Brown asked him why. He replied, "It doesn't take a rocket scientist." He then said that he could not say, stating that the Planning Board was its own entity. At this time Ms. Brown reminded Town Manager Manzi that she had been subjected to sexual harassment and that he had done nothing about it. Town Manager Manzi replied, "I know." Adding insult to injury, Town Manager started rubbing Ms. Brown's back. She turned and walked away from him.

26. On or about April 10, 2018, Ms. Brown asked to be heard at a Planning Board meeting. Mr. Rabideau, who had just been elected Chairman, denied Ms. Brown's request.

27. Ms. Brown received a termination letter in the mail on or about April 11, 2018, notifying her of the termination of her employment as Planning Board Secretary.

28. Throughout Ms. Brown's employment with the Town of Seabrook, Town employees received no training in sexual harassment.

29. Ms. Brown timely filed a Charge of Discrimination on May 23, 2018, filing dually with the New Hampshire Commission for Human Rights and the United States Equal Employment Opportunity Commission. Exhibit A.

30. Ms. Brown received a Notice of Right to Sue from the EEOC on March 14, 2019, and files this civil action within 90 days of receipt of such notice, as required. Exhibit B. Ms. Brown has also notified the New Hampshire Commission for Human Rights of her intent to

pursue a civil action for her State law claims as allowed by RSA 354-A:21-a, causing said Commission to close its file on or about February 26, 2019.

## COUNT I

### (Violation of Title VII—Sexual Harassment against Town of Seabrook)

31. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

32. Ms. Brown was subjected to sexual harassment in the workplace that was unwelcome, severe and pervasive, including abundant sexual epithets that were uniformly offensive and at times threatening.

33. The sexual harassment was committed by persons who qualified as supervisors of Ms. Brown because they had the power to affect the terms and conditions of Ms. Brown's employment.

34. The sexual harassment resulted in a tangible employment action, specifically Ms. Brown's termination.

35. The defendant Town of Seabrook knew or should have known about the sexual harassment to which Ms. Brown was subjected based on Ms. Brown's reports and the personal observations and knowledge of management personnel with the Town.

36. Notwithstanding that the defendant Town knew or should have known about the sexual harassment to which Ms. Brown was subjected, the Town failed to take appropriate action to prevent, correct or remediate the harassment.

37. The defendant Town bears liability for the sexual harassment suffered by Ms. Brown in connection with her employment.

38. As a direct and proximate result of the sexual harassment suffered by Ms. Brown, Ms. Brown has incurred and continues to incur damages, including without limitation lost wages, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life.  Ms. Brown is further entitled to her reasonable attorney's fees, plus interest and costs.

## COUNT II

### (Violation of Title VII—Retaliation Against Town of Seabrook)

39. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

40. Ms. Brown engaged in protected activity under Title VII, reporting to the defendant Town that she was being subjected to sexual harassment and asking the Town to remediate the harassment.

41. Ms. Brown suffered materially adverse actions by the defendant Town as a result of reporting sexual harassment, including but not limited to contamination of her workspace, destructive activity affecting her workspace and personal belongings, and ultimately the termination of her employment.

42. As a direct and proximate result of the retaliation inflicted on Ms. Brown, she suffered and continues to suffer damages, including without limitation lost wages, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life.  Ms. Brown is further entitled to her reasonable attorney's fees, plus interest and costs.

## COUNT III

### (Sexual Harassment in Violation of RSA 354-A Against All Defendants)

43. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

44. Ms. Brown was subjected to sexual harassment in the workplace that was unwelcome, severe and pervasive, including abundant sexual epithets that were uniformly offensive and at times threatening.

45. The sexual harassment was committed by persons who qualified as supervisors of Ms. Brown because they had the power to affect the terms and conditions of Ms. Brown's employment.

46. The sexual harassment resulted in a tangible employment action, specifically Ms. Brown's termination.

47. The defendant Town of Seabrook knew or should have known about the sexual harassment to which Ms. Brown was subjected based on Ms. Brown's reports and the personal observations and knowledge of management personnel with the Town.

48. Notwithstanding that the defendant Town knew or should have known about the sexual harassment to which Ms. Brown was subjected, the Town failed to take appropriate action to prevent, correct or remediate the harassment.

49. The defendant Town bears liability for the sexual harassment suffered by Ms. Brown in connection with her employment.

50. The defendants Rabideau and Manzi aided and abetted the unlawful sexual harassment by failing to take appropriate action to prevent or correct the harassment notwithstanding their knowledge of the harassment. The defendants Rabideau and Manzi are therefore liable for aiding and abetting an unlawful discriminatory practice within the meaning of RSA 354-A:7, pursuant to RSA 354-A:2, XV (d).

51. The defendant Janvrin is liable for aiding and abetting sexual harassment within the meaning of RSA 354-A:2, XV (d) because by perpetrating sexual harassment upon Ms.

9

Brown he aided and abetted the defendant Town in subjecting Ms. Brown to an unlawful discriminatory practice within the meaning of RSA 354-A:7.

52. As a direct and proximate result of the sexual harassment suffered by Ms. Brown, Ms. Brown has incurred and continues to incur damages, including without limitation lost wages, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life. Ms. Brown is further entitled to enhanced compensatory damages based on the defendants' acts and omissions taken with willful or reckless disregard of Ms. Brown's rights under RSA 354-A. Additionally, Ms. Brown is entitled to her reasonable attorney's fees, plus interest and costs.

## COUNT IV

### (Retaliation in Violation of RSA 354-A Against All Defendants)

53. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

54. Ms. Brown engaged in protected activity under RSA 354-A, reporting to the defendant Town that she was being subjected to sexual harassment and asking the Town to remediate the harassment.

55. Ms. Brown suffered materially adverse actions by the defendant Town as a result of reporting sexual harassment, including but not limited to contamination of her workspace, destructive activity affecting her workspace and personal belongings, and ultimately the termination of her employment.

56. The defendants Janvrin, Rabideau and Manzi aided and abetted the retaliation to which Ms. Brown was subjected, by perpetrating and/or failing to remediate the contamination of Ms. Brown's work space, by perpetrating and/or failing to remediate destructive activity

affecting Ms. Brown's work space, and by influencing and/or making the decision not to renew Ms. Brown's employment contract and/or to terminate her employment.

57. As a direct and proximate result of the retaliation inflicted on Ms. Brown, she suffered and continues to suffer damages, including without limitation lost wages, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life. Ms. Brown is further entitled to enhanced compensatory damages based on the defendants' acts and omissions taken with willful or reckless disregard of Ms. Brown's rights under RSA 354-A. Additionally, Ms. Brown is entitled to her reasonable attorney's fees, plus interest and costs.

WHEREFORE, the plaintiff Maria Y. Brown respectfully prays this Honorable Court:

A. Schedule this matter for trial by jury, and after trial;

B. Find the defendant liable Town of Seabrook liable to the plaintiff for sexual harassment in violation of Title VII;

C. Find the defendant Town of Seabrook liable to the plaintiff for sexual harassment in violation of RSA 354-A;

D. Find the defendants Janvrin, Rabideau and Manzi liable to the plaintiff for aiding and abetting sexual harassment in violation of RSA 354-A;

E. Find the defendant Town of Seabrook liable to the plaintiff for retaliation in violation of Title VII;

F. Find the defendant Town of Seabrook liable to the plaintiff for retaliation in violation of RSA 354-A;

G. Find the defendants Janvrin, Rabideau and Manzi liable to the plaintiff for aiding and abetting retaliation in violation of RSA 354-A;

H. Award the plaintiff damages for economic losses including but not limited to lost wages and lost employment benefits;

I. Award the plaintiff compensatory damages including but not limited to damages for emotional distress, humiliation, inconvenience and loss of enjoyment of life;

J. Award the plaintiff enhanced compensatory damages;

K. Award the plaintiff attorney's fees, plus interest and costs; and

L. Grant such other and further relief as is just and equitable.

                                    Respectfully submitted,
                                    MARIA Y. BROWN
                                    By her attorneys,
                                    DOUGLAS, LEONARD & GARVEY, P.C.

Date: June 12, 2019                By:    /s/ Benjamin T. King
                                                  Benjamin T. King, NH Bar #12888
                                                  14 South Street, Suite 5
                                                  Concord, NH 03301
                                                  (603) 224-1988
                                                  benjamin@nhlawoffice.com